## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMERISOURCEBERGEN DRUG CORPORATION<br>227 Washington Street,<br>Conshohocken, PA 19428,<br><br>        Plaintiff,<br><br>    v.<br><br>A&E Community Pharmacy, Inc. d/b/a<br>Heights Community Pharmacy<br>1112 N. Floyd Road, Suite 9<br>Richardson, TX 75080-4243<br><br>    and<br><br>Alex Enoch Brumfield<br>9400 Wade Blvd., Apt. 1612<br>Frisco, TX 75035<br><br>    Defendants. | CIVIL ACTION NO. |

### COMPLAINT

Plaintiff, AmerisourceBergen Drug Corporation ("AmerisourceBergen"), by and through its undersigned counsel, Stradley Ronon Stevens & Young, LLP, by way of Complaint against Defendants, A&E Community Pharmacy, Inc. d/b/a Heights Community Pharmacy ("A&E Pharmacy") and Alex Enoch Brumfield (the "Guarantor") (A&E Pharmacy and the Guarantor are collectively referenced herein as the "Defendants"), avers as follows:

### NATURE OF ACTION

1.  AmerisourceBergen brings this action for breach of contract (Count I), unjust enrichment (Count II), promissory estoppel (Count III), fraud in the inducement (Count IV), and Conversion (Count V), against A&E Pharmacy and the Guarantor.

2.    As set forth in greater detail below, Defendants violated their contractual obligations and common law obligations to indemnify and reimburse AmerisourceBergen for the full $3,804,239.26 that AmerisourceBergen had to pay a third-party payer, CVS Caremark Corporation ("Caremark"), on A&E Pharmacy's behalf.  The payment relates to an audit by Caremark showing that A&E Pharmacy, as controlled by Guarantor, fraudulently overbilled Caremark and thereby received reimbursements from Caremark that it had no legitimate right to receive.

3.    Accordingly, AmerisourceBergen seeks all allowable compensatory, consequential and additional damages against each Defendant.

## THE PARTIES

4.    Plaintiff AmerisourceBergen is a corporation organized and incorporated pursuant to the laws of the State of Delaware, with its principal place of business in Chester County, Pennsylvania, at 1300 Morris Drive, Chesterbrook, Pennsylvania 19087.

5.    AmerisourceBergen is a national distributor of pharmaceutical and other products, including prescription and over-the-counter pharmaceuticals, nutritional, health and beauty care, and home health care products.

6.    AmerisourceBergen also provides services related to its pharmaceutical business, and serves, *inter alia*, as a pharmacy services administrative organization ("PSAO") under the "Elevate" trade name.

7.    Upon information and belief, A&E Pharmacy is a Texas for-profit corporation with a principal place of business at 1112 N. Floyd Road, Suite 9, Richardson, Texas 75080.

8.    Upon information and belief, A&E Pharmacy is a locally-owned, independent pharmacy located in Richardson, Texas.

9.    Upon information and belief, Alex Enoch Brumfield, the Guarantor, is an adult citizen of the state of Texas, domiciled at 9400 Wade Blvd., Apt. 1612, Frisco, TX 75035.

10.   Upon information and belief, Alex Enoch Brumfield is the Owner and CEO of A&E Pharmacy.

11.   Upon information and belief, A&E Pharmacy is a community drug store that is owned and operated by Alex Enoch Brumfield.  In essence, A&E Pharmacy is Alex Enoch Brumfield and Alex Enoch Brumfield is A&E Pharmacy.

## JURISDICTION AND VENUE

12.   This court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because Plaintiff is a citizen of Delaware and Pennsylvania, Defendants are citizens of Texas, and the amount in controversy exceeds $75,000.00.

13.   Venue in this district is proper pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or admissions giving rise to this action occurred in the Eastern District of Pennsylvania, and because Defendants consented to the exclusive jurisdiction of this district.  See Credit Agreement, attached hereto as Exhibit A, at ¶ 7; and Guaranty, attached hereto as Exhibit B at ¶ 1.

## FACTUAL BACKGROUND

**A.     The Parties' Business and Contractual Relationship**

*The Credit Agreement, Personal Guaranty, MPA & Term Sheet*

14.   On or about June 12, 2014, A&E Pharmacy executed and submitted a Credit Application and Credit Agreement (the "Credit Agreement") to AmerisourceBergen in order to,

among other things, establish a business relationship and credit terms for A&E Pharmacy with AmerisourceBergen and grant AmerisourceBergen a security interest in all of A&E Pharmacy's assets, which was duly accepted by AmerisourceBergen. A true and correct copy of the Credit Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

15.     On or about June 13, 2014, the Guarantor executed that certain Personal Guaranty, pursuant to which he agreed to be jointly and severally, irrevocably and unconditionally liable to AmerisourceBergen for all of the debts and obligations of A&E Pharmacy to AmerisourceBergen, including, without limitation, interest and attorneys' fees (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as Exhibit "B" and incorporated herein by reference.

16.     A&E Pharmacy is also a party to that certain Master Program Agreement dated as of June 10, 2015 (the "MPA") and the Elevate Provider Network Term Sheet (the "Term Sheet").[1]

17.     Pursuant to the MPA and the Term Sheet, AmerisourceBergen, under the trade name Elevate Provider Network ("Elevate"), agreed to negotiate on A&E Pharmacy's behalf with third-party payers with respect to reimbursements paid by those third-party payers for prescriptions A&E Pharmacy filled for customers of those third-party payers. As part of this agreement, AmerisourceBergen also agreed to assist A&E Pharmacy with billing to the third-party payers, as well as with the reimbursements received from the third-party payers.

---

[1]   The MPA and Term Sheet are documents already in the possession of all parties hereto and can be made available to the Court upon request. However, the MPA and Term Sheet are subject to confidentiality provisions agreed upon by the parties, and disclosure of the MPA and Term Sheet as a matter of public record would violate the confidentiality provisions of the MPA and Term Sheet, substantially harming the parties to this action as well as other uninvolved third-parties. Accordingly, should it be deemed appropriate for those documents to be filed of record with the Court, AmerisourceBergen respectfully requests leave to file any such documents under seal.

18.     In addition to A&E Pharmacy, AmerisourceBergen, under the Elevate trade name, performs these negotiating and billing functions for many other independent pharmacies.  AmerisourceBergen submits aggregate billing information on behalf of all of the independent pharmacies in its network to the third-party payers, and the third-party payers make aggregate reimbursement payments to AmerisourceBergen for allocation to the respective pharmacies in the Elevate network, including A&E Pharmacy, pursuant to certain agreements.

19.     Subsequent to the execution of the Credit Agreement and the Guaranty, A&E Pharmacy utilized the terms in the Credit Agreement to purchase pharmaceutical products from AmerisourceBergen in order to, among other things, fill prescriptions for its customers. A&E Pharmacy also utilized the terms in the Credit Agreement, the MPA and the Term Sheet to engage in business with AmerisourceBergen for pharmacy administrative services.

20.     In reliance upon A&E Pharmacy's promises under the Credit Agreement, the MPA and the Term Sheet, and the Guarantor' promises under the Guaranty, AmerisourceBergen fully performed under the Credit Agreement, the MPA and the Term Sheet by providing certain pharmaceutical products and pharmacy administrative services to A&E Pharmacy.

### *The Elevate Provider Network*

21.     AmerisourceBergen, under the trade name of the Elevate Provider Network, receives and consolidates prescription benefits claims reimbursements (individually a "Reimbursement" and  collectively "Reimbursements") from various pharmacy benefits managers (individually a "Payor" or collectively "Payors"), and then forwards those Reimbursements to A&E Pharmacy and other independent pharmacies in Elevate's network pursuant to certain agreements between AmerisourceBergen and the pharmacies.

- 5 -

22.     A&E Pharmacy executed various documents to participate in the Elevate network and to demonstrate acceptance of the terms thereof, which were mutually executed by AmerisourceBergen, including the MPA and the Term Sheet that is incorporated into the MPA.

23.     In order to obtain Reimbursements through Elevate's system, A&E Pharmacy submitted prescription benefits claims ("Claims") for Reimbursements to the Payors for approval.[2] Upon receipt and approval of a Claim, the Payors remitted the funds to A&E Pharmacy through AmerisourceBergen.  The Reimbursements were then paid by AmerisourceBergen to A&E Pharmacy.

24.     Payors may also, *inter alia*, pursuant to certain agreements between the respective Payors and A&E Pharmacy, review and/or audit A&E Pharmacy's Claims and reverse Reimbursements for disapproved Claims and debit the amounts for those reversed Reimbursements against payments to AmerisourceBergen on behalf of A&E Pharmacy and all of the other independent pharmacies in its network ("Recoupments").

25.     AmerisourceBergen has no direct involvement or liability to A&E Pharmacy regarding A&E Pharmacy's submission of Claims to Payors or the Payors' audits and/or reversals of A&E Pharmacy's Claims and the Payors' corresponding Recoupments of the Reimbursements.  In fact, the Term Sheet in the MPA specifically provides as follows under the paragraph titled "Dispute Liability":

> [A&E Pharmacy] is solely responsible for its relationships with Payors, including responding to, defending and resolving such disputes (including legal expenses) and paying any amounts owed as a result of a dispute. [A&E Pharmacy] agrees to reimburse and

---

[2]   A prescription benefit Reimbursement Claim is typically submitted to a Payor by a pharmacy when a patient presents a prescription for fulfillment to the pharmacy. The pharmacy first verifies the patient's insurance coverage with the Payor, receives a co-pay from the patient, then submits a Claim to the Payor for a Reimbursement of the remaining portion of the prescription medication cost pursuant to the agreements between the member pharmacy and the Payors.

> indemnifies AmerisourceBergen for any offset taken by a Payor
> for a Claim against [A&E Pharmacy] and AmerisourceBergen may
> reduce or delay other payments to [A&E Pharmacy], including
> without limitation payments from another Payor, if anticipated
> offsets or adjustments may create a negative balance.
> AmerisourceBergen may take any lawful actions under this or
> other agreements between AmerisourceBergen and Customer to
> recover any amount owed by [A&E Pharmacy] to
> AmerisourceBergen including recovery of interest, costs and
> reasonable attorneys' fees.

MPA Term Sheet, ¶ 4(d).

26.     Accordingly, pursuant to the agreements between the parties, including,

but not limited to, the MPA, Defendants were, and are, solely responsible for their relationships

with Payors and are required to indemnify and reimburse AmerisourceBergen for amounts paid

by AmerisourceBergen to Payors on behalf of A&E Pharmacy.  See id.

27.     Addtionally, A&E Pharmacy agreed that, "[i]f payment is delinquent,

AmerisourceBergen may . . . withhold payments to [A&E Pharmacy]."  MPA, p. 7 at ¶ 2.2.

28.     A&E Pharmacy also agreed that AmerisourceBergen would "serve as

[A&E Pharmacy's] exclusive contracting entity for Payor Contracts and Central Pay for [A&E]

Pharmacy." Term Sheet, ¶4(f).

29.     A&E Pharmacy further granted AmerisourceBergen a security interest in:

> [A]ll [of A&E Pharmacy's] personal property and any and all
> additions, substitutions, Accessions and Proceeds thereto or thereof,
> wherever located, and now owned or hereafter acquired or arising,
> including the following (collectively, the "Collateral"): All of [A&E
> Pharmacy]'s (a) Accounts; (b) Inventory; (c) Chattel Paper; (d)
> Commercial Tort Claims as disclosed on [A&E Pharmacy]'s Financial
> Statements; (e) Deposit Accounts; (t) Documents; (g) Equipment; (h)
> General Intangibles; (i) Goods; G) Instruments; (k) Investment Property;
> (I) Letter of Credit Rights; (m) insurance on all of the foregoing and
> the proceeds of that insurance; (n) [A&E Pharmacy]'s money and other
> property of every kind and nature now or at any time or times hereafter in
> the possession of or under the control of AmerisourceBergen; and (o)
> the Cash proceeds, Noncash proceeds and products of all of the
> foregoing and the Proceeds of other Proceeds.

(the "Collateral"). See the Credit Agreement, Exhibit A at 2, ¶2.

      30.    AmerisourceBergen perfected its security interest in the Collateral with

the filing of a UCC-1 Financing Statement with the Texas Secured Transaction Registry on July

25, 2014.

      31.    AmerisourceBergen's collateral includes, but is by no means limited to,

A&E Pharmacy's incoming Reimbursements.

      32.    Moreover, A&E Pharmacy specifically agreed that it "will not make any

sales, leases or other disposition of any of the Collateral except in the ordinary course of

business." See Credit Agreement, Exhibit A at ¶ 2.

### *The Caremark Audit*

      33.    After the execution of the MPA, from around March 2016 through August

2016, A&E Pharmacy's monthly submissions to Caremark for reimbursement ranged from

approximately $22,000 to $57,000 per month.  In September 2016, A&E Pharmacy's monthly

submissions to Caremark for reimbursement jumped to $158,000, then to $258,000  in October

2016, and finally, A&E Pharmacy's submissions to Caremark for reimbursement increased to

over $1,000,000.00 in both November and December of 2016.  At the same time, A&E

Pharmacy's purchases from AmerisourceBergen remained flat.  Therefore, while A&E Pharmacy

was submitting for reimbursements for over twenty (20) times more prescriptions, it was not

purchasing any additional drugs from AmerisourceBergen to fill this astronomical surge in

supposed prescriptions.

      34.    Sometime in or around February 28, 2017, Caremark, a Payor, initiated an

audit of A&E Pharmacy's previously submitted Reimbursement Claims (the "Caremark Audit"),

which, upon information and belief, was initiated in part due to A&E Pharmacy's sharp and

sudden increase in reimbursement submissions.

35.     After conducting an audit of claims it paid to A&E Pharmacy during the period August 1, 2016 through January 8, 2017, third-party payer Caremark determined that A&E Pharmacy had been overpaid by Caremark in the amount of $3,308,034.14, an incredible amount given that, prior to this six-month period, A&E Pharmacy's claims with Caremark averaged only approximately $37,521 per month. Caremark provided A&E Pharmacy with a list of these discrepancies and permitted A&E Pharmacy to submit documentation to help resolve certain discrepancies. Despite having the opportunity to dispute and substantiate certain discrepant claims, A&E Pharmacy did not submit any documentation or appeal Caremark's findings, even after Caremark extended the time period to appeal.

36.     After affording A&E Pharmacy the opportunity to submit documentation to resolve certain discrepancies that were identified by Caremark, Caremark finalized the results of the Caremark Audit and found total discrepancies of $3,308,034.14. A copy of the Caremark Final Discrepancy Letter dated June 14, 2017 is attached hereto as Exhibit "C" and incorporated herein by reference.

37.     Pursuant to the agreements between A&E Pharmacy and Caremark, when any audit total exceeds $7,500.00, Caremark applies a 15% audit fee which, in this instance, totals $496,205.12, for a combined total of **$3,804,239.26** of Recoupments. See id.

38.     Consequently, on July 13, 2017, Caremark deducted the amount, $3,308,034.14, that it had previously overpaid A&E Pharmacy from the aggregate payment that it made to AmerisourceBergen on behalf of all pharmacies in the network.

39.     Subsequently, on July 27, 2017, Caremark deducted another $496,205.12, the audit fee that it charged A&E Pharmacy, from the aggregate payment that it made to AmerisourceBergen on behalf of all pharmacies in the network.

40.     Pursuant to the terms of the MPA and the Term Sheet, AmerisourceBergen then allocated the amount A&E Pharmacy owed to Caremark to A&E Pharmacy's Central Pay Account.  A&E Pharmacy only had $793,958.62 in its Central Pay Account against which AmerisourceBergen could offset the amount it had to repay Caremark, leaving the Negative Balance in the A&E Pharmacy Central Pay Account of $3,010,280.64 (the "Negative Balance").

### A&E Pharmacy's Subsequent Sharp Decrease in Prescriptions

41.     In or around January of 2017, A&E Pharmacy's monthly submissions to Caremark for reimbursement dropped to approximately $730,000, followed by a significant decrease in February of 2017, around the time of the Caremark Audit, to approximately $212,000, which occurred without notice or explanation to AmerisourceBergen.

42.     Since April 2017, A&E Pharmacy's monthly submissions to Caremark for reimbursement have been below $100,000.

43.     Because of the precipitous drop in monthly submissions by A&E Pharmacy, AmerisourceBergen is unable to recoup from A&E Pharmacy's Reimbursements from Payors the full amount AmerisourceBergen had to pay to Caremark on A&E Pharmacy's behalf.

44.     A&E Pharmacy received Reimbursements to which it was not entitled from Caremark.  Caremark recouped the amounts it overpaid by taking the funds from AmerisourceBergen.  Since A&E Pharmacy incurred this obligation to Caremark which AmerisourceBergen had to repay, A&E Pharmacy has not repaid AmerisourceBergen and has taken active steps to avoid repaying AmerisourceBergen in violation of the Credit Agreement, the MPA and the Term Sheet.

B.    **Defendants' Breach of Their Agreements**

45.    A&E Pharmacy agreed to, among other things, "comply with all federal and state laws, including the Prescription Drug Marketing Act, and regulations and ordinances, including those adopted by Boards of Pharmacy, Drug Enforcement Administration, Food and Drug Administration, Medicare and Medicaid agencies, and all AmerisourceBergen policies, as amended from time to time . . ." Exhibit A, Credit Agreement ¶ 3.  Additionally, A&E Pharmacy agreed to "use its best efforts to operate each Pharmacy with diligence and vigor, and maintain the highest possible ethics, maintain its facilities and personnel in a manner that is a credit to the community and reflects the high standards and quality of Network Providers and the Elevate Network."  Term Sheet ¶ 4(e).

46.    A&E Pharmacy defaulted under the terms of the MPA and the related Term Sheet with respect to its failure to repay the Negative Balance and its failure to "use its best efforts to operate each Pharmacy with diligence and vigor, and maintain the highest possible ethics, maintain its facilities and personnel in a manner that is a credit to the community and reflects the high standards and quality of Network Providers and the Elevate Network," and all other applicable regulations and AmerisourceBergen policies.

47.    A&E Pharmacy is also in default under the Credit Agreement by, among other things, failing to pay all of its existing liabilities, including the Negative Balance in the A&E Pharmacy Central Pay Account, to AmerisourceBergen and its affiliates.  See Credit Agreement, attached hereto as Exhibit A, at ¶ 4(a).  The Credit Agreement defines an "Event of Default" as "(a) [A&E Pharmacy] fail[ing] to pay when due any amount owing to AmerisourceBergen or its affiliates; (b) [A&E Pharmacy] failing to comply with any of the provisions of this Credit Agreement or any other agreement existing or hereafter entered into

between [A&E Pharmacy] and AmerisourceBergen or its affiliates .... " Exhibit A, Credit Agreement at ¶ 4.

48. The Guarantor defaulted under the Guaranty by, among other things, failing to make a prompt and full payment of all obligations of A&E Pharmacy to AmerisourceBergen, including the Guarantor's failure to pay the Negative Balance in the A&E Pharmacy Central Pay Account.

49. Furthermore, A&E Pharmacy is in breach of the MPA and the Term Sheet, for failing to repay the Negative Balance. The MPA defines an event of default as, *inter alia*, A&E Pharmacy's "failure to pay any amount due and such failure continues five days after written notice; or failure to perform any other material obligation of the [MPA] or any other agreement between the parties or their affiliates and such failure continues for 30 days after it receives notice of such breach from the non-breaching party." MPA at ¶ 5.1 (b) and (c).

50. Pursuant to the Credit Agreement, upon occurrence of an Event of Default, AmerisourceBergen may, among other things, "accelerate and declare all Obligations immediately due payable without demand or notice." Exhibit A, Credit Agreement at ¶ 5(a).

51. Pursuant to the Credit Agreement, if payment is delinquent, AmerisourceBergen may "assess a per-day late payment fee of the lower of 0.05% (18%/360) or the maximum rate permitted by law on the outstanding balances until paid, beginning on the first (1st) business day after such due date." Id. at ¶ 1.

52. Under the Credit Agreement, upon an occurrence of an event of default, A&E Pharmacy is obligated to pay AmerisourceBergen's "costs, expenses and reasonable counsel fees (including allocated fees and expenses of AmerisourceBergen's in-house counsel), whether or not suit is instituted" for any action taken to enforce AmerisourceBergen's rights and

remedies under the Credit Agreement, and "until paid, [such costs, expenses, and counsel fees] will be additional obligations under [the] Credit Agreement." Id. at ¶ 6.

53.     The Credit Agreement further provides that "[t]he obligations, representations and covenants of [A&E Pharmacy] to AmerisourceBergen under this Credit Agreement will survive until all Obligations are indefeasibly paid in full." Id. at ¶ 3(j).

### Individual Guarantor's Breach of The Personal Guaranty

54.     The broad scope of the personal Guaranty provides that:

by reason of his [ ] financial interest in [A&E Pharmacy] and as an inducement for AmerisourceBergen Drug Corporation ("AmerisourceBergen") to extend credit to [A&E Pharmacy], and intending to be legally bound, hereby jointly and severally, irrevocably and unconditionally guarantee, as sureties, to AmerisourceBergen and its successors and assigns the prompt and full payment (and not merely the ultimate collection) and performance of all Obligations (as defined in the attached Credit Agreement) of [A&E Pharmacy] to AmerisourceBergen, whether now existing or hereafter arising.

Exhibit B, Guaranty.

55.     The Credit Agreement defines "Obligations" as "*all of [A&E Pharmacy's] existing and future liabilities to AmerisourceBergen* and its affiliates . . ." Exhibit A at ¶ 2 (emphasis added).

56.     On or about July 19, 2017, AmerisourceBergen, by and through its undersigned counsel, sent A&E Pharmacy and the Guarantor a notice of default and written demand for payment of the Negative Balance (the "July 19 Demand Letter"). A copy of the July 19 Demand Letter is attached hereto as Exhibit "D" and incorporated herein by reference.

57.     Despite the foregoing written demand for payment, A&E Pharmacy and the Guarantor have failed to reimburse AmerisourceBergen as instructed and as required by the MPA, the Term Sheet, the Credit Agreement and the Guaranty, and A&E Pharmacy continues to

see a decrease in Reimbursements thereby preventing AmerisourceBergen from recovering the Negative Balance.

58.     As a result of the aforementioned defaults, A&E Pharmacy and the Guarantor, jointly and severally, owe to AmerisourceBergen the following amounts as of July 28, 2017:

| | | |
|---|---|---|
| Negative Balance | $ | 3,010,280.64 |
| Interest | $ | 19,331.48 |
| Attorneys' Fees (as of 7/27/17) | $ | 15,328.37 |
| **TOTAL** | **$** | **3,044,940.49** |

together with a per diem late fee of $1,505.14 accruing after July 28, 2017, and together with all additional costs of suit and collection costs, including, without limitation, reasonable attorneys' fees accrued and accruing hereafter, to AmerisourceBergen pursuant to the Credit Agreement.

## COUNT I
## BREACH OF CONTRACTS
### (Against A&E Pharmacy)

59.     AmerisourceBergen incorporates the above paragraphs by reference as if fully set forth herein.

60.     In reliance upon the MPA, the Term Sheet, and the Credit Agreement, all of which were executed by A&E Pharmacy, AmerisourceBergen provided certain goods and services to A&E Pharmacy.

61.     AmerisourceBergen fully performed its obligations to A&E Pharmacy under the terms of the MPA, the Term Sheet, and the Credit Agreement.

62.     A&E Pharmacy, however, has failed or refused to pay AmerisourceBergen the Negative Balance due and owing in violation of the MPA, the Term Sheet, and the Credit Agreement.

63.     A&E Pharmacy's foregoing conduct constitutes a material breach of the MPA, the Term Sheet, and the Credit Agreement.

64.     To date, there is currently an amount due and owing by A&E Pharmacy of Three Million Forty-Four Thousand Nine Hundred Forty Dollars and Forty-Nine Cents (**$3,044,940.49**), together with a per diem late fee of $1,505.14 accruing from and after July 28, 2017, plus all additional costs of suit and collection costs, including, without limitation, reasonable attorneys' fees accrued and accruing hereafter, to AmerisourceBergen pursuant to the Credit Agreement.

65.     A&E Pharmacy's foregoing material breaches have directly and proximately caused AmerisourceBergen damages.

WHEREFORE, Plaintiff AmerisourceBergen Drug Corporation demands judgment against Defendant, A&E Community Pharmacy, Inc. d/b/a Heights Community Pharmacy, in the amount of Three Million Forty-Four Thousand Nine Hundred Forty Dollars and Forty-Nine Cents (**$3,044,940.49**), together with a per diem late fee of $1,505.14 accruing from and after July 28, 2017, plus interest, reasonable attorneys' fees, costs and expenses, and such other relief as this Court deems appropriate.

## COUNT II
## BREACH OF CONTRACT
### (Against Guarantor)

66.     AmerisourceBergen incorporates the above paragraphs by reference as if fully set forth herein.

67.     Pursuant to the terms of the Guaranty, the Guarantor agreed to pay AmerisourceBergen all amounts due and owing to AmerisourceBergen from A&E Pharmacy. See Exhibit B.

68.   In reliance upon the Guarantor' promises under the Guaranty, AmerisourceBergen provided certain goods and services to A&E Pharmacy.

69.   AmerisourceBergen fully performed its obligations under the terms of the MPA, the Term Sheet, and the Credit Agreement.

70.   The Guarantor, however, has failed or refused to pay AmerisourceBergen the amounts due and owing by A&E Pharmacy.

71.   The Guarantor's foregoing conduct constitutes a material breach of the Guaranty.

72.   To date, there is currently an amount due and owing by the Guarantor of Three Million Forty-Four Thousand Nine Hundred Forty Dollars and Forty-Nine Cents (**$3,044,940.49**), together with a per diem late fee of $1,505.14 accruing from and after July 28, 2017,  plus all additional costs of suit and collection costs, including, without limitation, reasonable attorneys' fees accrued and accruing hereafter, to AmerisourceBergen pursuant to the Credit Agreement and the Guaranty.

73.   The Guarantor' foregoing material breaches have directly and proximately caused AmerisourceBergen damages.

WHEREFORE, Plaintiff AmerisourceBergen Drug Corporation demands judgment against Defendant/Guarantor, Alex Brumfield, in the amount of Three Million Forty-Four Thousand Nine Hundred Forty Dollars and Forty-Nine Cents (**$3,044,940.49**), together with a per diem late fee of $1,505.14 accruing from and after July 28, 2017, plus interest, reasonable attorneys' fees, costs and expenses, and such other relief as this Court deems appropriate.

## COUNT III
## QUANTUM MERUIT/UNJUST ENRICHMENT
### (Against All Defendants)

74.     AmerisourceBergen incorporates the above paragraphs by reference as if fully set forth herein.

75.     AmerisourceBergen provided goods and services to A&E Pharmacy with the expectation of compensation by A&E Pharmacy.

76.     A&E Pharmacy and the Guarantor knew and agreed that AmerisourceBergen expected to be repaid any amounts that AmerisourceBergen may advance or spend on A&E Pharmacy's behalf.

77.     A&E Pharmacy and the Guarantor accepted the benefits of the goods and services provided by AmerisourceBergen without making full payment for such goods and services, despite repeated demands for payment, while preventing AmerisourceBergen from being repaid the Negative Balance.

78.     A&E Pharmacy and the Guarantor were enriched by the goods and services provided by AmerisourceBergen, at AmerisourceBergen's expense.

79.     It would be against equity and good conscience to permit A&E Pharmacy and the Guarantor to retain these benefits from AmerisourceBergen, as there is no justification for the refusal of A&E Pharmacy and the Guarantor to pay AmerisourceBergen the Negative Balance pursuant to the MPA, the Term Sheet, and the Credit Agreement.

80.     If it is determined that there is no remedy at law for AmerisourceBergen, it would be inequitable to allow A&E Pharmacy and the Guarantor to receive the benefits of the MPA, the Term Sheet, and the Credit Agreement without requiring A&E Pharmacy and/or the Guarantor to pay AmerisourceBergen the full value of the benefits rendered to A&E Pharmacy and the Guarantor.

WHEREFORE, Plaintiff AmerisourceBergen Drug Corporation demands judgment against Defendants, A&E Community Pharmacy, Inc. d/b/a Heights Community Pharmacy and Alex Enoch Brumfield, in the amount of Three Million Forty-Four Thousand Nine Hundred Forty Dollars and Forty-Nine Cents (**$3,044,940.49**), together with a per diem late fee of $1,505.14 accruing from and after July 28, 2017, plus interest, reasonable attorneys' fees, costs and expenses, and such other relief as this Court deems appropriate.

**COUNT IV**
**PROMISSORY ESTOPPEL**
**(Against All Defendants)**

81.    AmerisourceBergen incorporates the above paragraphs by reference as if fully set forth herein.

82.    In the alternative to recovery under breach of contract, AmerisourceBergen is entitled to recovery under the doctrine of promissory estoppel.

83.    At all times material hereto, A&E Pharmacy and the Guarantor promised AmerisourceBergen that it would remit payment to AmerisourceBergen for certain goods and services pursuant to the Credit Agreement and the Guaranty, executed by Defendants on June 12, 2014 and June 13, 2014, respectively.

84.    A&E Pharmacy and the Guarantor made this promise with the reasonable expectation of inducing action on the part of AmerisourceBergen.

85.    AmerisourceBergen performed its obligations pursuant to the MPA, the Term Sheet, and the Credit Agreement and the Guaranty for A&E Pharmacy and the Guarantor' benefit in reasonable reliance upon the foregoing promise.

86.     There is an amount due and owing from A&E Pharmacy and the Guarantor to AmerisourceBergen for certain goods and services that AmerisourceBergen provided pursuant to the MPA, the Term Sheet, and the Credit Agreement.

87.     A&E Pharmacy and the Guarantor materially breached their foregoing promises to pay AmerisourceBergen for all billed amounts pursuant to the terms of the MPA, the Term Sheet, and the Credit Agreement.

88.     The foregoing material breach has directly and proximately caused AmerisourceBergen damages, as of July 28, 2017, in the amount of Three Million Forty-Four Thousand Nine Hundred Forty Dollars and Forty-Nine Cents (**$3,044,940.49**), together with a per diem late fee of $1,505.14 accruing from and after July 28, 2017,  plus interest, reasonable attorneys' fees, costs and expenses, and such other relief as this Court deems appropriate.

89.     The Court can only avoid injustice by finding that A&E Pharmacy's and the Guarantor's promises to AmerisourceBergen are binding.

WHEREFORE, Plaintiff AmerisourceBergen Drug Corporation demands judgment against Defendants, A&E Community Pharmacy, Inc. d/b/a Heights Community Pharmacy and Alex Enoch Brumfield, in the amount of Three Million Forty-Four Thousand Nine Hundred Forty Dollars and Forty-Nine Cents ($3,044,940.49), together with a per diem late fee of $1,505.14 accruing from and after July 28, 2017, plus interest, reasonable attorneys' fees, costs and expenses, and such other relief as this Court deems appropriate.

## COUNT V
## FRAUD IN THE INDUCEMENT
### (Against All Defendants)

90.     AmerisourceBergen incorporates the above paragraphs by reference as if fully set forth herein.

91.     Defendants affirmatively misrepresented and omitted the true nature of their business intentions by representing, among other things, that A&E Pharmacy will "use its best efforts to operate each Pharmacy with diligence and vigor, and maintain the highest possible ethics, maintain its facilities and personnel in a manner that is a credit to the community and reflects the high standards and quality of Network Providers and the Elevate Network" and comply with all federal and state laws and all AmerisourceBergen policies.  See Term Sheet ¶ 4(e) and Credit Agreement ¶ 3.  Defendants, however, had ill intentions since the beginning of the formation of the parties' relationship and affirmatively misrepresented their intentions in order to use AmerisourceBergen to perpetrate their fraudulent scheme knowing that, if third-party payers such as Caremark audited A&E Pharmacy's claims, AmerisourceBergen would incur the loss.  Defendants knowingly made these misrepresentations to AmerisourceBergen with the intent of inducing AmerisourceBergen to accept A&E Pharmacy into the Elevate network.

92.     AmerisourceBergen reasonably relied on Defendants' intentional misrepresentations when it entered the Credit Agreement and the MPA with A&E Pharmacy and when it approved A&E Pharmacy for participation in the Elevate Provider Network, causing AmerisourceBergen to incur millions of dollars of damages.

93.     The fact that A&E Pharmacy was given the opportunity to appeal the audit but, even after Caremark extended that time period to appeal, A&E Pharmacy did not submit any documentation to substantiate its claims or appeal Caremark's findings that it had overpaid A&E Pharmacy, is further evidence of Defendants' fraudulent scheme.

94.     As a result of Defendants' knowing and intentional misrepresentations, which induced AmerisourceBergen to contract with A&E Pharmacy, AmerisourceBergen has suffered significant damage as a direct and proximate result of Defendants' fraudulent actions.

WHEREFORE, Plaintiff AmerisourceBergen Drug Corporation demands judgment against Defendants, A&E Community Pharmacy, Inc. d/b/a Heights Community Pharmacy and Alex Enoch Brumfield, for an amount of compensatory damages to be proven at trial, punitive damages and for reasonable costs and attorneys' fees, and such other relief as this Court deems appropriate.

### COUNT VI
### CONVERSION
### (Against All Defendants)

95.    AmerisourceBergen incorporates the above paragraphs by reference as if fully set forth herein.

96.    Defendants converted, for their own use and benefit, monies due and owing to AmerisourceBergen by, among other things, failing to pay all of its existing liabilities, including the negative balance in its Central Pay Account, to AmerisourceBergen and its affiliates.

97.    Defendants' conversion was without consent and without lawful justification.

WHEREFORE, Plaintiff AmerisourceBergen Drug Corporation demands judgment against Defendants, A&E Community Pharmacy, Inc. d/b/a Heights Community Pharmacy and Alex Enoch Brumfield, in the amount of Three Million Forty-Four Thousand Nine Hundred Forty Dollars and Forty-Nine Cents (**$3,044,940.49**), together with a per diem late fee

of $1,505.14 accruing from and after July 28, 2017, plus interest, reasonable attorneys' fees,

costs and expenses, and such other relief as this Court deems appropriate.

                              STRADLEY RONON STEVENS & YOUNG, LLP

                              _____
                              Joseph J. McNale, Esq.  (ID No. 65706)
                              Mark J. Dorval, Esq.    (ID No. 76785)
                              Samantha B. Kats, Esq.  (ID No. 316178)
                              2005 Market Street, Suite 2600
                              Philadelphia, PA 19103-7018
                              P: (215) 564-8000
                              F: (215) 565-8120
                              E: SKats@Stradley.com
                              *Attorneys for Plaintiff,*
Dated:  August 1, 2017        *AmerisourceBergen Drug Corporation*

# 3301873